IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**EVAN GERALD MILER,**

        **Plaintiff,**

v.

**TD BANK USA, NATIONAL ASSOCIATION; TARGET ENTERPRISE, INC.; and DOES 1 through 100,**

        **Defendants.**

3:20-cv-00340-BR

OPINION AND ORDER

**KYLE W. SCHUMACHER**
Perry, Shields, Campbell, Floyd, PLLC
227 North Loop 1604 East
Suite 130
San Antonio, TX 78232
(503) 913-9354

        Attorneys for Plaintiff

**NICHOLAS L. DAZER**
121 S.W. Morrison Street
Suite 475
Portland, OR 97204
(503) 953-1043

1 - OPINION AND ORDER

**BRIAN MELENDEZ**
Barnes & Thornburg LLP
225 South Sixth Street
Suite 2800
Minneapolis, MN 55402
(612) 367-8734

> Attorneys for Defendants TD Bank USA, National Association; Target Enterprise, Inc.

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Target Enterprise, Inc.'s Motion (#24) for Dismissal. The Court concludes the record is sufficiently developed such that oral argument would not be helpful to resolve this Motion. For the reasons that follow, the Court **GRANTS** Target's Motion and dismisses Plaintiff's Second Claim against Target.

## BACKGROUND

The following facts are taken from Plaintiff Evan Gerald Miler's First Amended Complaint and the parties' materials related to Target's Motion to Dismiss.

In March 2019 Plaintiff "had taken out his first unsecured loan . . . with [Defendant] TD Bank . . . and purchased personal, family or household goods from [Defendant] Target." First Am. Compl. ¶ 11. At some point Plaintiff "became financially unable to keep up with the monthly payments." First Am. Compl. ¶ 17. "Defendants began contacting Plaintiff [in] June . . . 2019 to

2 - OPINION AND ORDER

inquire about the status of the loan and to collect on the payments that were no longer being made." First Am. Compl. ¶ 18.

On June 20, 2019, Plaintiff's counsel "sent a letter of revocation addressed to TD Bank" in which he "revok[ed] his consent, if it was previously given, to be called on his telephone." First Am. Compl. ¶ 20, 22. TD Bank received the letter on June 28, 2019. "Defendants continued to make unsolicited calls to [Plaintiff's] cellular telephone." First Am. Compl. ¶ 23.

On September 14, 2019, Plaintiff's counsel "sent a second letter of revocation to TD Bank." First Am. Compl. ¶ 25. "Defendants continued to contact Plaintiff between . . . June 20, 2019 [and] February 7, 2020," on Plaintiff's cellular telephone. First Am. Compl. ¶ 26. "Defendants' calls were frequent in nature and continued despite receiving written confirmation that Plaintiff was revoking any consent that may have been previously given to be called on his cellular telephone." First Am. Compl. ¶ 30.

On March 3, 2020, Plaintiff filed a Complaint against TD Bank USA, National Association, and Does 1 through 100 asserting a claim for violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.

On June 19, 2020, Plaintiff filed a First Amended Complaint against TD Bank, Target, and Does 1 through 100 asserting claims

3 - OPINION AND ORDER

against all Defendants for violation of the TCPA and Oregon's Unlawful Debt Collection Practices Act (UDCPA), Oregon Revised Statutes § 646.639.

On August 17, 2020, Target filed a Motion for Dismissal of Plaintiff's Second Claim as to Target for violation of the UDCPA on the ground that Plaintiff failed to state a claim against Target. The Court took Target's Motion under advisement on September 22, 2020.

## **STANDARDS**

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955 [(2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally

4 - OPINION AND ORDER

consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## DISCUSSION

As noted, Target moves to dismiss Plaintiff's Second Claim against Target for violation of the UDCPA on the ground that Plaintiff does not state sufficient facts in his First Amended Complaint to state such a claim against Target.

**I.   The Law**

Oregon Revised Statutes § 646.639(2)(e) provides:

> A debt collector engages in an unlawful collection practice if the debt collector, while collecting or attempting to collect a debt, . . . [c]ommunicates with a debtor . . . repeatedly or continuously or at times known to be inconvenient to the debtor . . . and with intent to harass or annoy the debtor.

The Ninth Circuit has held Oregon's UDCPA is substantially similar to the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692d(5), and, therefore, Oregon courts "may examine federal precedent for contextual support when they

5 - OPINION AND ORDER

construe" the UDCPA. *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 687, 710-11 (2012). *See also Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 21 (1991)(when a state statute is based on a similar federal statute, decisions from federal courts may provide guidance).

## II.  Analysis

Target moves to dismiss Plaintiff's UDCPA claim against it on the grounds that in his First Amended Complaint Plaintiff does not allege Target received Plaintiff's letters of revocation; knowledge of Plaintiff's correspondence to TD Bank cannot be imputed to Target; and, therefore, Plaintiff does not state facts that are sufficient to establish that Target had an intent to harass or to annoy Plaintiff.

### A.  **Plaintiff does not allege facts sufficient to establish that Target received Plaintiff's letters of revocation or notice of Plaintiff's revocation.**

Target asserts Plaintiff has not stated facts sufficient to establish that Target either received Plaintiff's letters revoking consent or had notice that Plaintiff revoked his consent to be called on his cellular telephone.

As noted, Plaintiff alleges the following in his First Amended Complaint related to his letters of revocation:

> 20.  Counsel for Plaintiff sent a letter of revocation addressed to TD Bank regarding the Loan on or about June 20, 2019 (the "First Revocation").

6 - OPINION AND ORDER

>    21. Plaintiff believes his revocation and representation letter was received by TD Bank on June 28, 2019.
>
>    22. Plaintiff informed TD Bank, through his letter of revocation, that he was revoking his consent, if it was previously given, to be called on his telephone.
>
>    23. Plaintiff was frustrated that Defendants continued to make unsolicited calls to his cellular telephone after contacting TD Bank to revoke his consent.
>
>                            * * *
>
>    25. Counsel for Plaintiff sent a second letter of revocation to TD Bank on or about September 14, 2019 (the "Second Revocation").

First Am. Compl. ¶¶ 20-23, 25.  Plaintiff's First Amended Complaint does not contain any allegation that Plaintiff sent a letter of revocation to Target, that Target received a letter of revocation, or that Target was aware of Plaintiff's letters of revocation.  In fact, TD Bank states in its Answer that it did not inform Target about Plaintiff's letters of revocation because

>    Mr. Miler's letters . . . were sent to TD's headquarters, not to the credit-card servicer to whom they should have been directed and who was clearly and conspicuously identified on the monthly account statements that were sent to Mr. Miler.  The letters also did not identify which retailer's card Mr. Miler had an account for, but rather gave only a partial account number.
>
>    TD issues cards for multiple retailers, each of whose cards is independently serviced.  While a credit-card servicer might be able to identify an account from the information in Mr. Miler's letter, TD's headquarters could not, and could not identify which servicer it could direct the letter

7 - OPINION AND ORDER

to.

TD Bank's Answer at ¶¶ 61-62.

The Court concludes Plaintiff has not alleged facts in his First Amended Complaint that are sufficient to establish that Target received Plaintiff's letters revoking his consent to be called on his cellular telephone or that Target had notice that Plaintiff revoked such consent.

### B. TD's notice of Plaintiff's revocation cannot be imputed to Target.

Plaintiff alleges in his First Amended Complaint that he "informed TD Bank directly, and *Target by agency* with TD Bank, that he had revoked consent to be contacted by Defendants and was represented by counsel on at least one of the numerous telephone calls he received in 2019." First Am. Compl. at ¶ 33 (emphasis added). Even assuming for the purposes of Target's Motion that Target is an agent of TD Bank, under Oregon law notice of facts flows upwards to a principal rather than downwards to an agent under the "imputed-knowledge rule." The Oregon Court of Appeals explained the imputed-knowledge rule in *Atkeson v. T & K Lands, LLC*: "An agent's knowledge acquired within the scope of the agency is imputed to the principal, regardless of whether the agent actually communicates that knowledge to the principal." 258 Or. App. 373, 382 (2013)(quotation omitted).

> That imputed-knowledge rule is described in the Restatement (Third) of Agency § 5.03 (2006) as follows:

8 - OPINION AND ORDER

> "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal."

*Id*. at 382-83. "Notice of facts that a principal knows or has reason to know[, on the other hand,] is not imputed downward to an agent. . . . This protects the agent from the legal consequences of facts that only the principal knows or has reason to know. " Restatement (Third) of Agency § 5.03, cmt. g.

As noted, Plaintiff has alleged only that he sent letters of revocation to TD Bank and that TD Bank received those letters. TD Bank states in its Answer that it did not inform Target about Plaintiff's letters of revocation. Thus, even if Target was an agent of TD Bank, the Court concludes TD Bank's knowledge of Plaintiff's revocation cannot be imputed to Target under the imputed-knowledge rule.

    **C.   Call volume alone does not establish a debt collector's "intent to harass or [to] annoy."**

As noted, the UDCPA provides "[a] debt collector engages in an unlawful collection practice if the debt collector . . . [c]ommunicates with a debtor . . . repeatedly or continuously . . . with intent to harass or [to] annoy the debtor." Courts have held call volume alone does not establish an intent to harass or to annoy a debtor because a debt collector may be calling for acceptable reasons such as "to inform or

9 - OPINION AND ORDER

remind the debtor of the debt, to determine reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." *Borneisen v Capital One Fin. Corp.*, No. 8:09-CV- 02539-T-17TGW, 2011 WL 2730972, at *13 (M.D. Fla. July 13, 2011). *See, e.g., Peak v. Prof'l Credit Serv.*, No. 6:14-CV-01856-AA, 2015 WL 7862774, at *7 (D. Or. Dec. 2, 2015)(granting the defendant's motion for summary judgment as to the plaintiff's UDCPA claim on the ground that "[t]he evidence suggests an intent by [defendant] to establish contact with plaintiff, rather than an intent to harass."). Plaintiff does not plead any facts in his First Amended Complaint to support his allegation that Target had the intent to harass or to annoy him. In fact, Plaintiff alleges in his First Amended Complaint that "Defendants began contacting Plaintiff [in] June . . . 2019 to inquire about the status of the loan and to collect on the payments that were no longer being made." Moreover, Plaintiff does not allege Target was aware of Plaintiff's revocation letters or that Target had notice of Plaintiff's revocation.

The Court concludes Plaintiff has not alleged facts sufficient to establish that Target had an intent to harass or to annoy Plaintiff, and, therefore, Plaintiff has not sufficiently stated a claim against Target for violation of the UDCPA. Accordingly, the Court grants Target's Motion for Dismissal of Plaintiff's Second Claim as to Target for violation of the UDCPA.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant Target Enterprise, Inc.'s Motion (#24) for Dismissal and **DISMISSES** Plaintiff's Second Claim as to Target.  Because, however, Plaintiff may be able to amend his First Amended Complaint to plead facts sufficient to state a claim against Target for violation of the UDCPA, the Court **GRANTS** Plaintiff leave to file a Second Amended Complaint no later than **November 2, 2020,** to the extent that Plaintiff can cure the deficiencies set forth in this Opinion and Order.

IT IS SO ORDERED.

DATED this 6th day of October 2020.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge

11 - OPINION AND ORDER