# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EVAN GERALD MILER, an individual, | Case No. 3:20-cv-00340-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| TD BANK USA, National Association; TARGET ENTERPRISE, INC.; and DOES 1 through 100 inclusive, | |
| Defendants, | |

Kyle W. Schumacher, PO Box 558, Spring Branch, TX 78070. Attorney for Plaintiff.

Brian Melendez, Barnes & Thornburg LLP, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402; Nicholas L. Dazer, Nicholas L. Dazer PC, 121 SW Morrison Street, Suite 475, Portland, OR 97204. Attorneys for Defendants.

**IMMERGUT, District Judge.**

This matter comes before the Court on Defendants Target's ("Target") and TD Bank's

PAGE 1 – OPINION AND ORDER

("TD Bank") Motion for Dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[1] ECF 41. This Court finds that Plaintiff Evan Gerald Miler's Second Amended Complaint ("Complaint"), ECF 37, fails to allege sufficient facts to state a facially plausible claim against TD Bank under the Oregon Unlawful Debt Collection Practices Act (ORS 646.639) ("UDCPA") as alleged in the Second Cause of Action. Accordingly, Defendants' Motion for Dismissal, ECF 41, is GRANTED.

## BACKGROUND[2]

Plaintiff obtained a Target credit card, which was issued by TD Bank in approximately March of 2019. *See* ECF 37 at ¶ 9; ECF 46 at 5. Plaintiff began making payments on his Target credit card until he was unable to do so and stopped paying his credit card bills. *See* ECF 37 at ¶ 11. Under the credit card arrangement, Target services and collects money owed on behalf of and allegedly as an agent for TD Bank. *Id.* ¶ 10. Target began calling Plaintiff in or about June of 2019 regarding the delinquent account. *Id.* at ¶ 12. On or about June 20, 2019, Plaintiff's counsel sent a letter to TD Bank revoking his consent to be called about the debt he owed on the Target credit card (the "First Revocation"), which, according to the certified mail receipt, was received by TD Bank on or about June 28, 2019. *See id.* at ¶¶ 14–16. Notably, the Complaint alleges that the First Revocation was sent only to TD Bank.

After TD Bank's receipt of the First Revocation, Target continued to contact Plaintiff. *Id.* at ¶ 17. As the calls persisted, Plaintiff's Counsel sent a second letter to Defendant TD Bank on

---

[1] Although the Motion for Dismissal, ECF 41, is brought by all Defendants, only TD Bank is named in the Second Cause of Action, which is at issue in the motion.

[2] The following facts are taken from Plaintiff's Complaint. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff.").

or about September 14, 2019 (the "Second Revocation"). *Id.* at ¶ 18. Again, the Second Revocation was sent directly to TD Bank. The Complaint provides no information as to whether the Second Revocation mentioned the specific credit card account or that Target was the loan servicer on the account. After receipt of the Second Revocation, Target continued to contact Plaintiff from approximately June 20, 2019 through February 7, 2020, by calling his cellular telephone. *Id.* at ¶ 19. Plaintiff asserts that TD Bank ignored the First and Second Revocation, and did not forward either to Target, but instead allowed Target to continue to contact Plaintiff. *Id.* at ¶ 21. In total, Target contacted Plaintiff on at least 252 separate occasions after receiving the First Revocation; allegedly calling Plaintiff multiple times within the same hour time span. *Id.* at ¶ 27, 46.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not,

however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

In deciding a motion to dismiss, courts may under certain circumstances look beyond the four corners of the pleading without converting the motion into a summary judgment motion under Rule 12(d). Specifically, courts can consider documents attached to the complaint as well as documents "not physically attached to the complaint . . . if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

## DISCUSSION

Defendant TD Bank moves to dismiss the second claim in Plaintiff's Complaint against TD Bank under Fed. R. Civ. P 12(b)(6).[3] For the reasons set forth below, Plaintiff's Complaint

---

[3] In an earlier proceeding, *Miler v. TD Bank USA, Nat'l Ass'n*, No. 3:20-cv-00340-BR, 2020 WL 5913179 (D. Or. Oct. 6, 2020), the Honorable Anna J. Brown considered whether to dismiss the UDCPA claim against Target in Plaintiff's First Amended Complaint. The Court

PAGE 4 – OPINION AND ORDER

does not state a claim for relief against TD Bank under the UDCPA and this cause of action must be dismissed.

**A. Revocation Letters from Counsel Do Not Establish that TD Bank Violated the UDCPA**

The UDCPA aims to protect consumers from unfair collection practices. The statute prohibits a creditor from "communicat[ing] with a debtor . . . repeatedly or continuously or at times known to be inconvenient to the debtor . . . and with intent to harass or annoy the debtor." ORS 646.639(2)(e). Plaintiff presents two different theories of TD Bank's liability under the statute. First, that TD Bank's intent can be inferred from the fact that Target's calls persisted despite TD Bank's receipt of the revocation letters which stated that Plaintiff did not want to be contacted. *Id.* Second, that Target's harassing conduct can be directly imputed to TD Bank.

With respect to Plaintiff's first argument, this Court assumes that TD Bank received the letters of revocation at issue because this fact was adequately pleaded. The Complaint notes that Plaintiff's counsel mailed the First Revocation to TD Bank on or about June 20, 2019. ECF 37 at ¶¶ 14–15. Counsel then mailed the Second Revocation to TD Bank on or about September 14, 2019. *Id.* at ¶ 18. While Plaintiff continued to receive calls from Target even after the receipt of these letters, this fact does not establish TD Bank's liability under the UDCPA. An entity violates the UDCPA when it "communicates with a debtor" and has the "intent to harass or annoy the debtor." ORS 646.639(2)(e). As a matter of law, contacting a represented party is not a per se violation of the UDCPA.[4] In addition, TD Bank is not alleged to have had any direct

---

dismissed this claim against Target—but granted Plaintiff leave to amend. *Id.* at *4. Plaintiff's current Complaint does not bring a claim against Target under the UDCPA. ECF 37.

[4] As Plaintiff's own citation notes, "[u]nlike the FDCPA, the [UDCPA] does not prohibit contact with a represented party." *Porter v. Wachovia Dealer Servs., Inc.*, No. 07-cv-592-KI, 2007 WL 2693370, at *6 (D. Or. Sept. 12, 2007). While the Fair Debt Collection Practices Act ("FDCPA") informs this Court's interpretation of the UDCPA, as discussed below, this Court notes that the two statutory schemes do not place the same emphasis on calling a represented

communication with Plaintiff. All calls to Plaintiff were made by Target or its subcontractors. ECF 37 at ¶ 19.

Further, even assuming TD Bank had an obligation to pass along the information that Plaintiff was represented by counsel, Plaintiff has failed to plead facts sufficient to show that TD Bank was provided with enough information to stop any debt collection conduct by Target. Plaintiff has failed to allege that the revocation letters provided TD Bank with the information it would need to notify the servicer about Plaintiff's account—such as the fact that Target was the servicer of the account at issue, or the specific Target account information. Plaintiff was also arguably on notice that this was an issue for the Court because Judge Brown's earlier decision referenced this precise argument. *Miler*, 2020 WL 5913179, at *3 ("TD issues cards for multiple retailers, each of whose cards is independently serviced. While a credit-card servicer might be able to identify an account from the information in [Plaintiff's] letter, TD's headquarters could not, and could not identify which servicer it could direct the letter to.") (quoting ECF 23 at ¶ 62). Accordingly, the allegations in the Complaint are insufficient to show TD Bank could pass along the information that Plaintiff was represented by counsel.

Even if this Court assumes that TD Bank's acts or omissions with respect to the letters evidences its intent, as discussed below, Plaintiff has not adequately explained how TD Bank violated the statute because Plaintiff has failed to plead facts sufficient to show Target was acting as TD Bank's agent in contacting Plaintiff, or that Target's conduct is sufficient to establish an intent to harass and annoy.

---

debtor. However, this does not mean that calling a represented party cannot ever constitute evidence of an intent to harass or annoy under the UDCPA. *See id.*

PAGE 6 – OPINION AND ORDER

**B. Plaintiff's Complaint Fails to Allege Facts Sufficient to Establish an Agency Relationship with Target or that Target's Conduct Violated the UDCPA**

Plaintiff claims that Target's repeated calls violated the UDCPA, and TD Bank, as Target's principal, can be held liable for this conduct. ECF 42 at 4. This argument only succeeds if Plaintiff's Complaint contains enough information to sustain a theory that Target violated the UDCPA and that this conduct can be imputed to TD Bank. This Court rejects this theory and finds that the Complaint contains insufficient information to establish both Target's intent to harass and annoy and the existence of an agency relationship.[5]

From approximately June 20, 2019 to February 7, 2020, Plaintiff received phone calls from Target on 252 separate occasions. ECF 37 at ¶ 19, 27. Often, Plaintiff would receive multiple calls in the same hour. *Id.* at ¶ 21. While Plaintiff's Complaint establishes that these calls were repeated or continuous,[6] there is little information to support Plaintiff's claim that Target conducted the calls with an intent to harass or annoy. This is because call volume itself is not dispositive on the question of intent. Turning to the text of the statute, it is apparent that repeated calls are alone insufficient to establish a claim under the statute.[7] After all, if proof of

---

[5] Under Oregon law, an agency relationship results "from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act. . . . [which results in] the principal [being] bound by or otherwise responsible for the actual or apparent agent's acts only if the acts are within the scope of what the agent is actually or apparently authorized to do." *Eads v. Borman*, 351 Or. 729, 735–36 (2012) (internal quotation marks and citation omitted).

[6] *See Porter*, 2007 WL 2693370, at *6 (holding that the plaintiff's claim survived summary judgment when defendant made only two phone calls to the plaintiff).

[7] Because the UDCPA is largely similar to its federal counterpart, the FDCPA, 15 U.S.C. § 1692d, a court may look to federal law for interpretive guidance. *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 697, 710–711 (2012) ("Oregon courts may examine federal precedent for contextual support when they construe state statutes that parallel federal law."); *see also Lyon v. Chase Bank U.S., N.A.*, 656 F.3d 877, 881 n.1 (9th Cir. 2011) (finding that "the UDCPA mirrors . . . the [FDCPA], which prohibits much of the

PAGE 7 – OPINION AND ORDER

repeated calls were enough, then the statute would not also demand that a plaintiff prove the creditor's intent. ORS 646.639(2)(e).

As this Court noted in its earlier decision dismissing Plaintiff's UDCPA claim against Target, courts routinely reject claims based on high call volume alone because a creditor may be calling for legitimate reasons. *Miler*, 2020 WL 5913179, at *4 ("Courts have held call volume alone does not establish an intent to harass or to annoy a debtor because a debt collector may be calling for acceptable reasons such as 'to inform or remind the debtor of the debt, to determine reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation.'") (quoting *Borneisen v Capital One Fin. Corp.*, No. 8:09–CV–02539–T–17TGW, 2011 WL 2730972, at *13 (M.D. Fla. July 13, 2011)). Courts considering similar claims have found for the creditor even where the facts showed a more aggressive approach to collection. *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (finding that the creditor did not violate the FDCPA as a matter of law even though there was evidence that the debtor received up to seven calls in a single day).

Because creditors may not explicitly reveal their exact motivations when contacting a debtor, courts often look to the circumstances of the calls to see if evidence of mal-intent can be inferred. *See Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) ("Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the

---

same conduct under federal law"). Still, this Court notes that there are differences between the two statutory schemes with respect to proof of intent and the level of harassment or annoyance necessary to sustain a claim. *Peak v. Pro. Credit Serv.*, No. 6:14-CV-01856-AA, 2015 WL 7862774, at *7 (D. Or. Dec. 2, 2015) ("First, the FDCPA's 'harass, oppress, or abuse' standard, 15 U.S.C. § 1692d, is more demanding than the [UDCPA]'s 'harass or annoy' standard, [ORS] § 646.639(2)(e). Second, the [UDCPA], unlike the FDCPA, requires proof the collector <u>intended</u> to harass or annoy the consumer.").

PAGE 8 – OPINION AND ORDER

substance of the phone calls, or the place to which phone calls are made.").[8] Here, the Complaint alleges that the calls were frequent in nature and that Plaintiff was called multiple times within the same hour. ECF 37 at ¶ 46. But these threadbare allegations provide almost no information from which this Court could infer that the pattern or substance of the calls were indicative of an effort to harass or annoy. *See Mountjoy v. Bank of America N.A.*, No. 2:15–cv–02204–TLN–DB, 2018 WL 339060, at *7 (E.D. Cal. Jan. 8, 2018) ("Courts have held that the date and contents of each alleged communication must be pled with particularity.").

The court in *Mountjoy* confronted a similar situation where the plaintiff pleaded that "from the period of March 2015 to present, [he] received notices, letters, calls from [defendants] at various hours of the day or night." *Id.* at *8. The court dismissed the FDCPA claim noting that the plaintiff "d[id] not detail the contents or dates of those alleged notices, letters, or calls" and "largely fail[ed] to allege facts about the communications at all." So too here, there is little information from which this Court can deduce Target's intent.

While it is true that receiving back-to-back calls in a single day could constitute an annoyance, courts have required additional evidence in order to establish intent. *See, e.g.*, *Hinderstein v. Advanced Call Ctr. Techs.*, No. CV 15-10017-DTB, 2017 WL 751420, at *5 (C.D. Cal. Feb. 27, 2017) (holding that even though the plaintiff received 49 calls in an 18-day period, the plaintiff could not establish egregious conduct on the part of the defendant because "[a]ll calls were made between 8:00 a.m. and 9:00 p.m, defendant allowed at least 90 minutes to elapse between each call, made no more than five calls in a single day, and did not call plaintiff's

---

[8] For an example of conduct constituting an intent to annoy, abuse, or harass, *see, e.g.*, *Kuhn v. Acct. Control Tech., Inc.*, 865 F. Supp. 1443, 1452–53 (D. Nev. 1994) (finding harassment where after the plaintiff hung up on the collection agent, she was called two additional times within a five-minute time-period—all at her place of employment).

work, family, or friends"); *Salmas v. I.C. Sys., Inc.*, No. SACV 14-01743-CJC(RNBx), 2015 WL 12656944, at *4 (C.D. Cal. June 16, 2015) ("Plaintiff's evidence demonstrates that Defendant made, at most, 3 calls a day at reasonable hours—conduct which courts have not found to be egregious or indicative of an intent to harass."); *Tucker*, 710 F. Supp. 2d at 1305 (declining to find harassment even though the plaintiff received multiple calls in a single day because the "[d]efendant never even spoke to [p]laintiff; [d]efendant was not notified that it could not reach [plaintiff] at the relevant telephone number and [p]laintiff did not request that [defendant] cease calling").

There are also legitimate justifications—not foreclosed by Plaintiff's Complaint—that could explain Target's frequent calls. It is unclear if multiple calls were placed because of a poor connection, a full voicemail box, or because of Plaintiff's request to be contacted at a different time. While *reasonable* inferences must be drawn in Plaintiff's favor, the lack of specificity in the Complaint puts this Court in the precarious position of having to fill the gaps in Plaintiff's pleading with its own speculation. Further, to the extent that Plaintiff did not answer the calls, courts have noted that a pattern of unsuccessful calls "suggests an intent by [defendant] to establish contact with plaintiff, rather than an intent to harass." *Peak*, 2015 WL 7862774, at *7 (quoting *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011)).

The Complaint also provides little information about the substance of the calls as Plaintiff only notes that on the occasions where he did answer a call, Target was merely "trying to collect on the debt." *Id.* at ¶ 48. This stands in stark contrast to cases where courts have found aggressive or inappropriate language to be indicative of harassment. *See, e.g.*, *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (finding that plaintiff stated a claim under the FDCPA where the debtor testified that the debt collector's agent was intimidating and

threatening—describing threats of garnishment accompanied by demands for overnight sending of payments); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 773–74 (7th Cir. 2003) (finding FDCPA violation where the defendant, who had been told not to call plaintiff at work, called plaintiff's coworker and said "tell [the plaintiff] to stop being such a [expletive] bitch"). Target's calls are consistent with its interest in seeing that the debt is paid. Oregon enacted the UDCPA "to prohibit debt collectors from using specific abusive practices." *Lyon*, 656 F.3d at 880 (citing ORS § 646.639(2) not to prohibit debt-collection communication altogether); *see also Porter v. Hill*, 314 Or. 86, 92 (1992) ("The statute . . . prohibits the debt collector from using unfair practices to collect it. Nothing in the statute evidences a legislative concern . . . distinct from the use of abusive methods to pressure debtors to pay their debts.").

Plaintiff takes issue with Target continuing to place calls even after the letters of revocation were received by TD Bank. But this fact does not speak to Target's intent because the Complaint does not state that TD Bank ever transmitted this information to Target. Plaintiff rehashes an argument that was already rejected by this Court in its previous decision. *See Miler*, 2020 WL 5913179, at *4 ("Plaintiff has alleged only that he sent letters of revocation to TD Bank and that TD Bank received those letters. TD Bank states in its Answer that it did not inform Target about Plaintiff's letters of revocation. Thus, even if Target was an agent of TD Bank,[9] the Court concludes TD Bank's knowledge of Plaintiff's revocation cannot be imputed to Target."). Nothing in the current Complaint suggests that this Court should abandon this earlier

---

[9] It is also doubtful whether Plaintiff has pleaded sufficient facts to indicate an agency relationship between Target and TD Bank. *See Lennard v. Yeung*, No. CV 10–09322 MMM (AGRx), 2012 WL 13006214, at *15 (C.D. Cal. Feb. 23, 2012) ("While the existence of an agency relationship is a factual matter, a complaint must plead facts indicating the existence of such a relationship to survive a motion to dismiss."). Plaintiff cannot rely on legal conclusions of agency that are cast as factual matters. *Id.*

PAGE 11 – OPINION AND ORDER

reasoning in favor of a finding that Target's intent can somehow be inferred from letters that it had no knowledge of.

With Plaintiff now unable to assert a UDCPA claim against Target, he attempts to salvage what is left of his claim against TD Bank by theorizing that Target's conduct can be imputed to its principal. Because there is still insufficient information in the Complaint to even state a claim against Target, this Court would be hard pressed to find that TD Bank is somehow responsible for conduct that even its agent is not liable for.

## CONCLUSION

Even assuming the truth of the allegations in Plaintiff's Complaint, and drawing reasonable inferences in its favor, Plaintiff has failed to state a claim against TD Bank. Accordingly, this Court GRANTS Defendants' Motion for Dismissal, ECF 41, and dismisses the UDCPA claim against TD Bank with prejudice.

**IT IS SO ORDERED.**

DATED this 15th day of February, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge