IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| EVAN GERALD MILER, an individual, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:20-cv-00340-IM |
| v. | ) ) | June 23, 2022 |
| TD BANK USA, NATIONAL ASSOCIATION; TARGET ENTERPRISE, INC.; and DOES 1 through 100 inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) | |

TELEPHONIC ORAL ARGUMENT

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE KARIN J. IMMERGUT

UNITED STATES DISTRICT COURT JUDGE

```
 1                TELEPHONIC or VIDEO APPEARANCES
 2   FOR THE PLAINTIFF:
                         KYLE W. SCHUMACHER
 3                       Attorney at Law
                         PO Box 558
 4                       Spring Branch, TX 78070

 5   FOR THE DEFENDANT(S):
                         BRIAN MELENDEZ
 6                       Barnes & Thornburg LLP
                         225 South Sixth Street
 7                       Suite 2800
                         Minneapolis, MN 55402
 8
     FOR THE DEFENDANT(S):
 9                       NICHOLAS L. DAZER
                         Nicholas L. Dazer PC
10                       121 SW Morrison Street
                         Suite 475
11                       Portland, OR 97204

12

13

14

15

16

17

18

19

20   COURT REPORTER:     Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
                         United States District Courthouse
21                       1000 SW Third Avenue, Room 301
                         Portland, OR 97204
22                       (503)326-8191

23                              * * *

24

25
```

1                    TRANSCRIPT OF PROCEEDINGS

2                         (June 23, 2022)

3    (Via videoconference:)

4           THE COURT:  Good afternoon, everyone.  We are on the

5    record in Miler v. TD Bank USA.  Case 20-cv-00340.  This is the

6    time set for the Court to hear any argument on defendant's

7    motion for fees in this case.

8        Counsel, let me have you state your appearances for the

9    record.

10       First, for plaintiff.

11          MR. SCHUMACHER:  Kyle Schumacher, appearing for the

12   plaintiff.

13          THE COURT:  Thank you.  And for defendants?

14          MR. MELENDEZ:  Your Honor, Brian Melendez, for the

15   defendants.

16          MR. DAZER:  And Nick Dazer, co-counsel.

17          THE COURT:  All right.  Thank you.  Let me tell you

18   what -- I just wanted to address a couple of things.  I know

19   this case has been hanging around a long time; so I'm hoping we

20   can get the final T's crossed and I's dotted.  I do want to

21   issue the judgment in the case, which I have prepared a

22   judgment.  I wanted to just double-check.  There are Doe

23   defendants that are included in the complaint.  I'm assuming

24   just the entirety of the case should be dismissed despite the

25   Doe defendants.

1          Is that right, Mr. Schumacher?
2                  MR. SCHUMACHER: That's correct. We're not looking
3     to add anything else. This would end the case.
4                  THE COURT: Okay. So I'm ready to issue the
5     judgment, and then I wanted to deal with the attorneys' fees.
6          Let me tell you my inclination on the attorneys' fees
7     that -- and it's tied in -- obviously, I analyzed the bad faith
8     previously and the Rule 11 motion, but my inclination is that
9     defendant should be entitled to some fees, and they should be
10    on fees related to the TCPA claim, post the *Facebook v. Duguid*
11    case, which came down in April of 2021. So my inclination is
12    to have -- to award fees for -- from May 2021 -- so after the
13    decision -- to -- for TCPA-related work, because I didn't
14    dismiss the other claim -- the UDCPA claim -- until later, and
15    I can't say that the plaintiff was even reckless in bringing
16    the -- on this record, the UDCPA claim. But the TCPA claim, it
17    seems to me, after the *Facebook* decision, there's at least
18    recklessness, which would be grounds to impose fees.
19         So why don't I -- since it's the defense motion, any
20    argument you want to make about that?
21                 MR. MELENDEZ: Your Honor -- I'm sorry. I'm hearing
22    an echo. Can you hear me okay?
23                 THE COURT: I can hear you okay.
24                 MR. MELENDEZ: Thank you. No, Your Honor. It sounds
25    like you have understood our motion. If you have any specific

1  questions, I'm happy to answer them.  But Your Honor has
2  explained the basis for that ruling, and I think you got
3  everything that we would have wanted to say to you.
4         THE COURT:  Okay.  What I would be asking is, then,
5  for you to give me a revised fee request that is consistent
6  with my inclined order, but let me hear from you,
7  Mr. Schumacher.  Anything you want to argue about where I'm
8  inclined to order -- what I'm inclined to order?
9         MR. SCHUMACHER:  Your Honor, defendants made three
10 claims for fees, and so you did not indicate under which
11 statute or code section you thought that they were entitled to
12 it.  Other than afterwards.  So it seems as though the Rule 37
13 request for fees is not going to be granted because that
14 occurred six or so months prior to the *Facebook* case being
15 ruled upon.
16     And then, also it would be the same argument for the
17 Rule 26 claims that Mr. Melendez brought because, again, those
18 were before the *Facebook* case.  All of those being set aside,
19 you're looking at an argument under 1927, and the idea -- it's
20 already been admitted by defendant that we did not act in bad
21 faith; but they've brought up, again, that we acted in bad
22 faith.
23     And they stated it on the record on the February 2nd
24 hearing, and I think that's an important thing to note -- that
25 we did not act in bad faith, and they admit we did not act in

1 bad faith. And after they admitted we did not act in bad
2 faith, they brought a motion saying that we acted in bad faith,
3 and I -- I think that's disingenuous but also to the point of
4 recklessness.
5     I have cited and there are even more cases where attorneys
6 across the country have brought this, including in the *Meier*
7 case; right? Clearly those -- those -- plaintiff's attorneys
8 were bringing claims related to LiveVox about what a TCPA claim
9 can do, and so there was several cases out there, that were
10 available, that were reflecting judges making decisions on
11 LiveVox, whether or not it was -- had the compatibility to be
12 an ATVS.
13     Therefore, it was not subject to this recklessness
14 standard. Specifically, we decided to refrain from doing as
15 much discovery as possible to kind of get an understanding
16 of -- of what the ramifications from *Facebook* would be.
17     Specifically, there's other cases across the country that
18 went to summary judgment and granted summary judgment against
19 the defendant and for the plaintiff on this exact issue:
20 Whether LiveVox was in violation of the TCPA. And that was
21 after *Facebook* was granted.
22     And so there was -- if those cases are out there and those
23 plaintiffs' attorneys were not acting recklessly, then there's
24 no fact that Mr. Melendez has cited to in which our -- that we
25 have acted recklessly in this case.

1    I also want to point to the fact that once *Meier* was ruled
2 on, technically, after we filed our answer and instead of
3 filing a motion to dismiss on the TCPA claim, a Rule 11 motion
4 was filed.  The mere arguments that we were making were that we
5 didn't act in bad faith, that we submitted the pleadings based
6 off of our understanding of the law in other cases and other
7 courts' understanding of the law.
8    All right.  So there's not any sort of conduct that
9 Mr. Melendez could point to.  There's no evidence that he cited
10 in any of the exhibits, related to this 1927 claim, that
11 suggests that we acted recklessly.
12    As a matter of fact, we agreed to stay the case.  The case
13 was actually stayed for over -- almost a year, I think.  And
14 when it was opened and the Ninth Circuit *Meier* case came out,
15 we decided -- or the Ninth Circuit made the decision on what
16 LiveVox was within the Ninth Circuit, and we did not go any
17 further after that.  We weren't planning on it.  We didn't file
18 any additional motions.  We read the case.  We came to the
19 hearing.  We explained we didn't think we violated Rule 11, and
20 we also explained we didn't plan on moving forward on that
21 claim anymore.
22    So all of that is actually very judicious, very measured.
23 We didn't do any -- take any steps after that to cause any
24 additional motion practice by the defendants, and they -- also,
25 there's another case that Mr. Melendez has stated.  It's a

1  companion case to this, which is the *Douglas* case, in which,
2  again, they found that there was no bad faith done.  In which
3  each motion we filed in both of those cases, he says that the
4  facts are exactly the same.  We're arguing about whether
5  LiveVox is an ATDS, and this is subject to contentious
6  litigation that's been going on for several years.
7       And it culminated in the Ninth Circuit, specifically
8  clarifying that a type of instrumentality used was not subject
9  to the TCPA and defined as an ATVS under the *Facebook* ruling;
10 but, again, it wasn't until six months later, six months after
11 we had filed our amended complaint, and we took no steps at
12 that point to try to further this litigation.  We didn't -- so
13 there was no vexatiousness.  There was no extending of hearings
14 or trials.  We're not trying to throw a loop for anyone.  I
15 can't think of one single item of conduct that we -- that was
16 done.  Nothing was cited in the motion that says that we acted
17 in such a way that they would be entitled to fees due to
18 recklessness.
19            THE COURT:  All right.  Thank you, Mr. Schumacher.
20      Mr. Melendez, do you want to respond?
21            MR. MELENDEZ:  Yes, Your Honor.  So there are a
22 couple of things that I would like to point to.  First of all,
23 we shouldn't be talking about bad faith because our motion
24 isn't based on bad faith.  It's based on, as Your Honor
25 mentioned, recklessness.

1          So in the record, Your Honor, at ECF 39-7 -- so the
2    *Facebook* ruling came down on -- April 1, 2021, the Supreme
3    Court decided the *Facebook* case.  ECF Doc 39-7 is an email from
4    me to Mr. Schumacher on April 20.  So a little less than three
5    weeks after the *Facebook* ruling.  Mr. Schumacher and I had
6    talked before that, and he had asked me for case law about the
7    LiveVox -- the LiveVox equipment that Target was using for the
8    calls.
9          In that email, I point him to a case that had recently
10   been decided in federal court in Kentucky where Target's
11   specific equipment was found not to be an autodialer.  And I
12   also cited in that one-page email about a dozen other cases,
13   including two cases from within the Ninth Circuit, holding that
14   this specific equipment -- not Target's equipment, but this
15   kind of LiveVox dialing technology was not an ATDS.  As far as
16   I know, there is no case anywhere that has held that the
17   LiveVox human call initiator is an ATDS.  Even though some
18   people did continue -- some plaintiffs' lawyers did try to
19   litigate that, none of those -- none of those arguments ever
20   prevailed.  That's the first thing.
21         The second thing is Mr. Schumacher wants to create the
22   idea that, you know, once the *Facebook* case or the *Meier* case
23   came out, that they just stopped.  Well, that's not true.
24         The *Meier* ruling came down on, I believe, January 19 of
25   this year.  At that time I was working on the defendant's

1   summary judgment motion because there was -- there was no move
2   toward getting rid the case by settlement.  And so when the
3   *Meier* case came down on January 19 -- not until February 16 did
4   Mr. Schumacher indicate that he was no longer going to pursue
5   the claim.  And during that time my client spent over $20,000
6   briefing a summary judgment motion that we ended up not needing
7   to file.
8        So I'll stop there, Your Honor.
9             THE COURT:  All right.  So based on -- again, the
10  record and the pleadings in this case -- I am going to stick
11  with my initial ruling.  And although certainly there was --
12  the defense presented evidence about discovery issues in the
13  case and things that happened earlier, it seems to me that the
14  clearest issue of recklessness is really what should have
15  happened after the Supreme Court's decision in the *Facebook*
16  case.  But, even, I'm going to afford the plaintiff another
17  month from the decision coming down to May 1st of 2021 --
18  excuse me -- '21 because I think it takes a little time to
19  regroup when a decision like that comes down.
20       So I'm going to afford them an additional 30 days where I
21  won't grant fees, but from May 1, 2021, anything related to
22  this TCPA claim, it seems to me, is fair, based on
23  recklessness, to award to the defense.
24       I'm not quite sure how hard it is to kind of tease out,
25  Mr. Melendez, exactly what's related to the TCPA claim.  I

```
 1  would err on the side of caution, just because that's what I'm
 2  ruling on, and --
 3          MR. MELENDEZ:  I understand, Your Honor.
 4          THE COURT:  I'll ask you to present a fee petition
 5  that has that -- that fee amount.
 6      I have the others.  I wasn't -- I don't quibble with the
 7  hourly rates of those involved.  The rates seemed reasonable to
 8  me, and the expenses seemed reasonable.  I just can't tell what
 9  is necessarily TCPA versus the Oregon law.
10      So, again, it seemed to me that it was fair to charge it
11  from that point, May 1, 2021, onward.
12      So that will be my order.  I will issue the judgment today
13  and then wait for a revised fee petition that tells me what
14  that amount is.
15      So why don't you confer with counsel before you submit it,
16  and I -- understanding that Mr. Schumacher doesn't agree with
17  my decision on it, but just at least that the fees are --
18  again, I don't quibble with the reasonableness of what was
19  presented to me already, just whether or not it's -- it's
20  lumped together.  So I want it to be separate TCPA.
21      Any questions?
22          MR. MELENDEZ:  Your Honor?
23          THE COURT:  Go ahead, Mr. Melendez.
24          MR. MELENDEZ:  Your Honor, I would like to ask for a
25  little bit of extra time on that.  I'm scheduled to go on
```

1  vacation on Monday through the Fourth of July; so I probably
2  wouldn't be able to pick this up until the 5th of July, unless
3  I worked on it over vacation.  I'm hoping Your Honor will give
4  a little leeway there.
5          THE COURT:  That's fine.  I'm not in a rush.
6      I know you all would like to finish with this case.  This
7  is one of the cases that sort of fell through the cracks early
8  on.  So I'd like to just move forward and allow you all to move
9  forward and wanted to make a pretty quick decision on this.
10     So I'm not -- you know, if you can get it to me by the
11 second week of July, that's fine.  I'll be gone, starting
12 July 17th; so I would encourage you, if you want me to issue an
13 order, then it should be before then.
14         MR. MELENDEZ:  That's doable Your Honor.
15         MR. SCHUMACHER:  Your Honor, I know you've already
16 made your decision, but I honestly cannot -- there's a material
17 misstatement that Mr. Melendez just stated, and that is about
18 summary judgment and about my actions and not agreeing to do
19 any sort of dismissal prior to February 16th whereas on
20 February 2nd, when we had that hearing, I indicated that I was
21 willing -- that we were not going to move forward on the case
22 related to that -- to the TCPA.
23     That's a material misstatement on his part, and I don't
24 think that that is accurate.
25     The other thing is we had conversations, and Mr. Melendez

1  stated that they had not worked on summary judgment, that he
2  had done no preparation for it and that he didn't think it was
3  necessary.  Also, as we talked about these things, it was when
4  the case was stayed.  There was no movement on this case being
5  done.  We were waiting for the Court to respond to a Rule 11
6  motion, and so -- and, then, finally, the other thing that I
7  just don't think that Mr. Melendez is aware of is the actual
8  case law.  So he cites the case law; I'm citing the case law.
9  I'm citing the case law that specifically granted summary
10 judgment to the plaintiff for -- against the defendant, the
11 defendant using LiveVox, and they determined that in 2021,
12 after *Facebook* was filed, that that was an ATDS.  Right?  And
13 there's no -- the recklessness is ephemeral.  It's general.
14 It's just basically because case law changed in the Ninth
15 Circuit in January, six months after we filed our complaint,
16 that this is being decided.
17      And so there is no specific or general example where we
18 acted recklessly, vexatiously, or had done anything to extend
19 the hearings in motion practice or anything like that.  As a
20 matter of fact, the exact opposite is true in this case.  All
21 of the hearings that we've had, except for the February 2nd one
22 on the Rule 11 motion, which was filed by Mr. Melendez, were
23 initiated by the defendants in this case.  That is a run-up of
24 fees, and I've never had another defense counsel do this in a
25 case.

1     So it is -- just because a case says that texting by
2  Facebook is not an ATDS, it does not define what LiveVox does
3  and what it had the capacity to do and what that meant.  But
4  what did happen was that the Ninth Circuit clarified that in
5  the Ninth Circuit where this case is held.
6     There can't be -- it's just an impossibility that there
7  would be any recklessness on his part when cases all across the
8  country were hearing LiveVox arguments, that some were being
9  granted, some were being denied.  That's just what happens in
10 the case.  And so to have some sort of ruling that what I did
11 was vexatious is contrary to the facts.  It's contrary to the
12 law that was going on.
13         THE COURT:  Okay.  Thank you, Mr. Schumacher.
14     What I'll do is I'm going to stick with my prior order.  I
15 hear what you're saying.  I disagree and still find that it
16 was -- the case -- the TCPA claim should have been dismissed
17 after the *Facebook* decision came out, and it was reckless not
18 to do that and to carry on with the litigation.
19     Let me -- tell me again, Mr. Melendez, you're coming back
20 on the 8th?  Is that what you said?
21         MR. MELENDEZ:  I'll be back in the office on the 5th.
22 The day after the Fourth of July.
23         THE COURT:  Can you submit something on the 8th?
24         MR. MELENDEZ:  I can, Your Honor.
25         THE COURT:  Or we can say the 11th.  That's a Monday.

```
 1          MR. MELENDEZ:  I can do it by the 8th.  I'll be
 2   happier doing it by the 11th.
 3          THE COURT:  That's fine.  I'll just say by the
 4   11th to --
 5          MR. MELENDEZ:  Thank you, Your Honor.
 6          THE COURT:  -- make sure it's done.  I can issue
 7   something by the 15th.
 8      All right.  So --
 9          MR. SCHUMACHER:  Your Honor, I have a question.  Is
10   the hearing -- is -- it sounds like you're granting it based
11   off of -- not on the discovery motions, and so are you going to
12   make a ruling on the fact that we had to defend discovery
13   motions that probably should not have been filed?
14          THE COURT:  I'm basically deciding that the -- you
15   should not have continued to pursue the TCPA claim after May 1,
16   2021.
17          MR. SCHUMACHER:  And that's because there was no case
18   law available to reflect that LiveVox could possibly be an ATDS
19   or that the systems used by Target's subcontractor could be an
20   ATDS?
21          THE COURT:  It's my view that the *Facebook* case makes
22   clear that the -- and the evidence in the record that the
23   system Target was using did not satisfy the requirements for
24   the TCPA claim; so that's why I'm awarding fees.  I have
25   determined not to -- although there was some issue, certainly,
```

1   in the discovery and the lack of responsiveness from plaintiff
2   in this case, but I'm not deciding based on those issues.
3       So before -- I didn't find in the bad -- in the Rule 11
4   bad faith motion.  I found that there wasn't enough at the
5   time -- the timing of the litigation because it was started
6   pre-*Facebook* that I couldn't say that it was bad faith, but at
7   some point, it seems to me, it at least becomes reckless and --
8   not to dismiss the claim.
9       So --
10          MR. SCHUMACHER:  And can I -- I appreciate your
11  patience, Your Honor.  I have one more point of reference,
12  which was, when this was requested, we were followed up by
13  TD Bank's counsel to file for fees, not by Target's.
14      Mr. Melendez has filed several pleadings stating that
15  they're separate, stating that the whole basis for the
16  reasoning of denying the motion to dismiss on the State claims
17  was because of that very issue.  And so they're bringing up
18  claims now -- they're basically stating the opposite.  They're
19  saying, "No, no, we actually did do everything together.
20  Target does do everything for TD Bank, and everything should be
21  combined."
22      TD Bank did not -- or sorry -- Target did not properly
23  meet and confer in the *Douglas* case.  That was, again,
24  something that Mr. Melendez failed to do, which was to have a
25  meet-and-conferral regarding the discovery disputes and the

1  other issues in that case.

2       And so I would -- I would hope that the fees would be
3  targeted -- excuse the pun -- would be focused solely on
4  TD Bank's fees and not on any fees related to Target doing this
5  defense.

6            THE COURT:  Mr. Melendez, you get the last word.
7  Does -- do you want to address that?

8            MR. MELENDEZ:  I will address that, Your Honor, and I
9  don't -- I don't want to get into a point-by-point
10 back-and-forth about the aspersions that Mr. Schumacher is
11 making, but let me just say on the record that I disagree with
12 most of what he has just said.

13      But, Your Honor, TD Bank and Target are -- Target is the
14 servicer of the account.  Target was the only party making the
15 calls.  TD Bank is in the case vicariously.  They've defended
16 it together.  I'm the lawyer for both of them.  There is
17 nothing that I was doing at any point that was not benefiting
18 both of those clients.  So the -- they are separate entities.
19 They do, do different things.  But for the purposes of
20 defending this case, they're both defendants, and there was no
21 work I did for one that wasn't also being done for the other.

22      So this is a -- an artificial distinction.  They were
23 separate legal entities, yes; but they were defending this case
24 together.

25           THE COURT:  And when -- now I'm forgetting.  Target

```
 1  was dismissed.  There was the voluntary dismissal.  When did
 2  that occur?
 3              MR. MELENDEZ:  Right.
 4              MR. SCHUMACHER:  February --
 5              THE COURT:  When, Mr. Schumacher?
 6              MR. SCHUMACHER:  February 16th.
 7              THE COURT:  Of 2021?
 8              MR. SCHUMACHER:  They were voluntarily dismissed in
 9  February of 2022, and we didn't bring the claims against them
10  based off of agency.  It was mainly against TD Bank.  But they
11  were dismissed -- I think you filed the motion on the State
12  claim on -- or, I'm sorry, entered your order on February 15th.
13  We then dismissed them on the TCPA claim or for just the whole
14  case on February 16th.  Of course, this was filed more than two
15  weeks after that.
16              THE COURT:  Okay.  All right.  Anything further,
17  Mr. Melendez?
18              MR. MELENDEZ:  There's a simple way to resolve this,
19  Your Honor.  I only sent one bill to anybody.  There were not
20  separate bills for TD Bank and Target.  There's no way to
21  extricate those.
22              THE COURT:  Okay.  So I'll wait for your fee
23  petition.  I'll issue the judgment today dismissing the case,
24  and then just to await fees.
25              MR. MELENDEZ:  Thank you, Your Honor.
```

```
 1              THE COURT:  Thank you.
 2              MR. DAZER:  Thank you, Your Honor.
 3              THE COURT:  We'll be in recess.
 4                     (Hearing concluded.)
```

C E R T I F I C A T E

Evan Gerald Miler v. TD Bank USA, et al.

3:20-cv-00340-IM

Telephonic Oral Argument

June 23, 2022

I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic proceedings heard via conference call, taken by stenographic means.  Due to the telephonic connection, parties appearing via speakerphone or cell phone or wearing masks due to coronavirus, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
_____

| Official Court Reporter | Signature Date: 7/26/2022 |
| Oregon CSR No. 98-0346 | CSR Expiration Date: 9/30/2023 |